**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-80007-CR-RLR**

**UNITED STATES OF AMERICA,**

**v.**

**YOANDY CORREA FLEIRES,**

**Defendant.**
______________________________/

# PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and YOANDY CORREA FLEIRES (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to Commit Health Care Fraud and Mail Fraud, in violation of Title 18, United States Code, Section 1349. The defendant also agrees to plead guilty to Count 31 of the Indictment, which charges the defendant with Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

2. This Office agrees to seek dismissal of the remaining counts in the Indictment after sentencing. The remaining counts are Counts 2-30, 32-40 of the Indictment.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the

Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that, as to Count 1, the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or gross loss resulting from the offense. The Court also must impose restitution and criminal forfeiture. As to Count 31, the Court must impose a term of imprisonment of two years, which must run consecutively to any other term of imprisonment imposed for any other offense, followed by a one-year term of supervised release. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this Agreement, a special assessment in the amount of

$100 will be imposed on the defendant for each count. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offense(s) committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings as to the guideline calculations:

a. Base Offense Level: the parties agree that pursuant to Sentencing Guideline §2B1.1(a)(1), the appropriate base offense level is seven (7).

b. Loss Amount: the parties agree that pursuant to Sentencing Guideline §2B1.1(b)(1)(K), the relevant loss amount resulting from the defendant's participation in the offense is $4,802,578.40, resulting in a eighteen-level enhancement for an amount greater than $3.5 million and less than $9.5 million.

c. Role Enhancement: the Government agrees not to seek a role enhancement under Sentencing Guideline §3B.1.1 for the defendant's role in the offense.

The parties remain free to advocate for or against any other sentencing enhancements or adjustments under the guidelines, and to argue for sentencing variances under 18 U.S.C. § 3553(a).

8. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section

3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the

defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

10. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to property, real or personal, that constitutes or is derived directly or indirectly from gross proceeds traceable to the health care violation charged in Count 1 of this Indictment. Additionally, the defendant agrees that the value of the property subject to forfeiture pursuant to 18 U.S.C. § 982(a)(7) which he obtained because of the violation charged in Count 1 is $926,751.56 (US), and he therefore also agrees to the entry of a forfeiture money judgment against him as part of sentence in this case in that amount.

11. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. Rs. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

12. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon

request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

13. In furtherance of the satisfaction of a forfeiture money judgment entered by the Court in this case, the defendant agrees to the following:

a. submit a financial statement to this Office upon request, within 14 calendar days from the request;

b. maintain any asset valued in excess of $10,000, and not sell, hide, waste, encumber, destroy, or otherwise devalue such asset without prior approval of the United States;

c. provide information about any transfer of an asset valued in excess of $10,000 since the commencement of the offense conduct in this case to date;

d. cooperate fully in the investigation and the identification of assets, including liquidating assets, meeting with representatives of the United States, and providing any documentation requested; and

e. notify, within 30 days, the Clerk of the Court for the Southern District of Florida and this Office of: (i) any change of name, residence, or mailing address, and (ii) any material change in economic circumstances.

14. The defendant further understands that providing false or incomplete information about assets, concealing assets, making materially false statements or representations, or making or using false writings or documents pertaining to assets, taking any action that would impede the

forfeiture of assets, or failing to cooperate fully in the investigation and identification of assets may be used as a basis for: (i) separate prosecution, including, under 18 U.S.C. § 1001; or (ii) recommendation of a denial of a reduction for acceptance of responsibility pursuant to the United States Sentencing Guidelines § 3E1.1.

15. The defendant understands and acknowledges that the Court must order restitution for the full amount of the victims' losses pursuant to 18 U.S.C. § 3663A. Defendant understands that the amount of restitution owed to the victims will be determined at or before sentencing unless the Court orders otherwise. This Office and the defendant stipulate and agree that the amount of restitution that the defendant shall pay is $926,751.56 in United States currency.

16. The defendant confirms that the defendant is guilty of the offense to which the defendant is pleading guilty; that the defendant's decision to plead guilty is the decision that the defendant has made; and that nobody has forced, threatened, or coerced the defendant into pleading guilty. The defendant affirms that the defendant has reviewed this agreement and enters into it knowingly, voluntarily, and intelligently, and with the benefit of assistance by the defendant's attorney.

*Space intentionally left blank*

17. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 5/22/23 BY: ______________________
SHANNON SHAW
ASSISTANT U.S. ATTORNEY

DATE: 5/23/23 BY: ______________________
GUSTAVO GARCIA-MONTES
ATTORNEY FOR DEFENDANT

DATE: 05/23/ BY: ______________________
YOANDY CORREA FLEIRES
DEFENDANT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-80007-CR-RLR**

**UNITED STATES OF AMERICA,**

**v.**

**YOANDY CORREA FLEIRES,**

**Defendant.**
_______________________________________/

## FACTUAL PROFFER

The United States and Defendant YOANDY CORREA FLEIRES ("Defendant" or "CORREA") agree that had this case gone to trial, the Government would have proved the following facts, among others, beyond a reasonable doubt, and that these facts are true and correct and establish Defendant's guilt of the charged offenses.

The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

Medicare was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b). Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, including durable medical equipment ("DME"), that were medically necessary and

ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose, such as prosthetic limbs, back braces, knee braces, and wheelchairs. It also includes wound care items.

For Florida beneficiaries, Medicare Part B's insurance concerning DME and related health care benefits, items, and services, was administered by CGS Administrators, LLC ("CGS") pursuant to a contract with HHS. Among CGS's responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

DME companies, physicians, and other health care providers that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a National Provider Identifier number ("NPI"). In the application, the provider acknowledged that to be able to participate in the Medicare program, the provider must comply with all Medicare-related laws and regulations. The NPI allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries.

Medicare permitted DME companies to submit claims for reimbursement electronically. Each claim required certain important information, including: (a) the Medicare beneficiary's name; (b) the Medicare beneficiary's identification number; (c) the name and NPI of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (d) the health care benefit, item, or service that was provided or supplied to the beneficiary; (e) the billing codes for each benefit, item, or service; and (f) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

Under Medicare rules and regulations, DME or other related health care benefits, items, or other services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare. When electronically submitting a claim, the provider certified that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

Medicare, through CGS, generally would pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other qualified health care providers. Payments under Medicare Part B were often made directly to the DME company rather than to the patient/beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care providers. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

CORA MEDICAL SUPPLY, INC. ("CORA") was a Florida company with a principal place of business in Palm Beach County, Florida. On May 20, 2022, CORREA obtained control of CORA, a company formed by another individual, which was purportedly in the business of supplying DME to Medicare beneficiaries. At this time, CORA was eligible to receive payments from Medicare for DME supplied to beneficiaries if the DME was medically necessary. Beginning on or about July 22, 2022, and continuing through on or about December 22, 2022, CORREA and his co-conspirators submitted and caused the submission of false and fraudulent Medicare claims on behalf of CORA, seeking approximately $4,802,578.40 for DME that was neither medically necessary nor ordered by a medical provider. Based on these false and

fraudulent claims, Medicare paid CORA approximately $926,751.56. Furthermore, the way in which Medicare paid CORA involved sending checks through the United States Postal Service from Camden, South Carolina to Palm Beach County, Florida. For example, between December 22, 2022 through December 30, 2022, Medicare mailed five different checks to CORA. This included check number 68841867 in the amount of $198,007.53.

The scheme was a classic "DME bust out scheme." Claims data establishes that CORA chiefly submitted for three different types of DME related to wound care: (i) collagen dressing, sterile, size 16 sq. in. or less, each; (ii) hydrocolloid dressing, wound cover, sterile, pad size more than 16 sq. in. but less than or equal to 48 sq. in., with any size adhesive border, each dressing; and (iii) collagen based wound filler, dry form, sterile, per gram of collagen. These claims falsely and fraudulently represented that the various DME provided were medically necessary, prescribed by a doctor, and had been provided by CORA to Medicare beneficiaries. While CORA had a physical location, the medical providers and beneficiaries listed on the claims to Medicare had never actually been to that location and had, in fact, never even heard of CORA. Moreover, the beneficiaries never needed nor received the DME billed to Medicare.

CORREA submitted, or caused to be submitted, Medicare claims that stated CORA had provided DME to Medicare beneficiaries pursuant to orders and prescriptions of various medical providers, who had been assigned unique NPIs. Medicare would not have issued the claim payments if the NPIs associated with the providers were not real and not actually associated with them. One such medical provider listed on claims from CORA was an individual "T.C." For example, a claim dated August 4, 2022 listed T.C. (assigned NPI ending in -3204) as the provider for DME for Medicare beneficiary J.B., claiming approximately $6,944.00 for that DME. T.C.

was a real person with the assigned NPI ending in 3204. The Defendant did not have lawful authority to use T.C.'s NPI. T.C. does not know the Defendant and never gave him permission to use T.C.'s identity.

The foregoing facts do not describe all the facts known to the Government in this matter, or fully describe all of the acts the Defendant and his co-conspirators engaged in, but are offered for the limited purpose of establishing a sufficient factual basis to support the Defendant's plea of guilty to the charges of aggravated identity theft and conspiracy to commit mail fraud and health care fraud.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 5/23/23 BY: ______________________
SHANNON SHAW
ASSISTANT U.S. ATTORNEY

DATE: 5/23/23 BY: ______________________
GUSTAVO GARCIA-MONTES
ATTORNEY FOR DEFENDANT

DATE: 05/23 BY: ______________________
YOANDY CORREA FLEIRES
DEFENDANT